IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AIR LIQUIDE MEXICO S. de R.L. | § | |
| de C.V. and AIR LIQUIDE PROCESS | § | |
| AND CONSTRUCTION, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TALLERES WILLIE, INC., | § | |
| BERNARDO AINSLIE, FELIX NINO | § | |
| LEIJA, TRAILBLAZER PILOT CAR | § | |
| SERVICES, LLC, CLAUDE JOSEPH | § | CIVIL ACTION NO. H-14-211 |
| KIMMEL d/b/a FREEDOM PILOT | § | |
| CAR SERVICES, CHARLES VAN | § | |
| KIRK d/b/a SLINGSHOT PILOT | § | |
| ESCORT SERVICES, WHEELING | § | |
| EQUIPMENT COMPANY, INC., | § | |
| GEORGE ORTIZ, and CONTRACTORS | § | |
| CARGO COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER ON PENDING MOTIONS

Pending are Plaintiffs' Motion for Reconsideration Regarding Trailblazer Pilot Car Services, LLC, and Motion for Leave to File Third Amended Complaint (Document No. 85); Defendant Contractors Cargo Company's Motion for Entry of Final Judgment (Document No. 86), in which Defendant Trailblazer Pilot Car Services, LLC has joinied;[1] Defendants Wheeling Equipment Company, Inc. and George Ortiz's Joint Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) (Document No. 91), in which Defendants Charles Van Kirk d/b/a Slingshot Pilot

---

[1] Document No. 87.

Car Services ("Van Kirk") and Claude Joseph Kimmel d/b/a Freedom
Pilot Car ("Kimmel") join;[2] Plaintiffs' Motion for Summary Judgment
Regarding Limitation of Liability (Document No. 93); Defendants Van
Kirk and Kimmel's Third Motion to Dismiss, with Prejudice (Document
No. 96); Defendants Van Kirk and Kimmel's Counter-Motion for
Summary Judgment (Document No. 113); Plaintiffs' Motion to Strike
Counter-Motion for Summary Judgment as Untimely (Document No. 116);
Plaintiffs' Opposed Objections and Motion to Strike Certain Summary
Judgment Evidence Relied Upon by Pilot Cars Defendants and Talleres
Willie Defendants (Document No. 117); and Defendants Van Kirk and
Kimmel's Supplement to Third Motion to Dismiss under FRCP 12(b)(1)
(Document No. 126).[3]  After carefully considering the motions,
responses, replies, and the applicable law, the Court concludes as
follows.

## I. Background

Plaintiffs Air Liquide Mexico S. de R.L. de C.V. ("Air Liquide
Mexico") and Air Liquide Process and Construction, Inc. ("Air

---

[2] Document No. 109.

[3] Also pending are Defendants Talleres Willie, Inc. and
Bernardo Ainslie's Motion to Extend Time to Respond to Plaintiffs'
Motion for Summary Judgment (Document No. 100), which is GRANTED,
and Defendants Van Kirk's and Kimmel's Opposed Motion for New
Docket Control Order and Status Conference (Document No. 112),
which is DENIED.  Plaintiffs' Opposed Motion to Strike and Response
to Pilot Car Defendants' Motion for New Docket Control Order and
Status Conference (Document No. 118) is therefore DENIED AS MOOT.

Liquide Process," and together with Air Liquide Mexico, "Plaintiffs") purchased a purification skid, which is a specialized piece of refinery processing equipment, to be used in Air Liquide Mexico's facilities in Mexico.[4]  The purification skid (sometimes referred to in the record as the APU skid) was more than 60 feet long, over 15 feet tall, over 15 feet wide, weighed approximately 63 tons, and was valued at more than $1 million.[5]  Plaintiffs contracted with Hansa Meyer Global Transport USA, LLC ("Hansa Meyer") to ship the purification skid from India to the Port of Houston, and from there to transport it by tractor trailer overland to Mexico.[6]

Hansa Meyer in turn hired Contractors Cargo Company ("Contractors Cargo") to arrange for the overland transportation of

---

[4] Document No. 79 ¶ 12 (Pls.' 2d Am. Compl.).

[5] Id.

[6] Hansa Meyer is not a party to this suit, and Plaintiffs' Second Amended Complaint--like their earlier pleadings--omits any reference to Hansa Meyer. See id. ¶¶ 12-13 ("After arriving at the Port of Houston, the APU skid was to be transported via tractor trailer from the Port of Houston directly to its final destination in Pesqueria, Mexico.  Contractors Cargo Company was hired to transport the APU Skid.  While it did not itself transport the Skid, it coordinated and arranged for the transport of the APU skid.").  As previously noted, Plaintiffs acknowledge that their sole contract was with Hansa Meyer.  Document No. 56 at 2 n.1 ("Plaintiffs sued Hansa Meyer Global Transport, LLC (the logistics company with whom Air Liquide contracted) for breach of contract and that lawsuit is pending in Montgomery County, Texas. Plaintiffs had no contract with any of the Defendants in the instant lawsuit.").

the purification skid.[7]   Contractors Cargo constructed a 140 foot
long custom-made lowboy trailer for the purification skid and then,
acting as a broker, contracted with Defendant Talleres Willie, Inc.
("Talleres Willie") to transport the trailer and the purification
skid to Mexico.[8]   Talleres Willie supplied the tractor, driver
(Defendant Felix Nino Leija ("Leija")), and other crew members
(including Defendant Bernardo Ainslie ("Ainslie")) to transport the
purification skid.[9]   Contractors Cargo also contracted with
Defendant Wheeling Equipment Company, Inc. ("Wheeling") to provide
a bucket truck driver, Defendant George Ortiz ("Ortiz"), and with
Defendant Trailblazer Pilot Car Services, LLC ("Trailblazer"),
which in turn selected and hired pilot car escorts--Defendants Van
Kirk and Kimmel--for the transportation of the purification skid.[10]

On March 4, 2013, a train hit the trailer, which was stalled
across the tracks at a railroad crossing in Magnolia, Texas,
severely damaging the purification skid.[11]   Plaintiffs allege that
Defendants improperly attempted to cross the railroad crossing at

---

[7] Document No. 79 ¶ 13.

[8] Id. ¶¶ 14-15.  A lowboy trailer is designed to carry tall
loads and stay within certain height limits. *See* Document No. 115-
18 at 2 of 4 to 4 of 4 (photographs of trailer).

[9] Id. ¶¶ 15, 17.  Plaintiffs have been unable to serve Leija
and believe he may be in Mexico.  Id. ¶ 5.

[10] Id. ¶ 18; Document No. 56 at 2.

[11] Document No. 79 ¶ 20.

an angle from the left side of the street, and then abandoned the trailer when it became stuck.[12]  Plaintiffs further allege that this accident was the result of a host of careless acts by Defendants, including most significantly their failure to inform the railroad of their crossing.[13]

Plaintiffs brought suit in state court and Contractors Cargo[14] timely removed the suit.[15]  The Court on February 18, 2015 held that Plaintiffs' state law claims against Talleres Willie, Ainslie, Van Kirk, Kimmel, Trailblazer, and Contractors Cargo were completely preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and accordingly dismissed those claims with prejudice, but granted Plaintiffs leave to amend their pleading to allege against Ainslie, Leija, Kimmel, and Van Kirk claims under the Carmack Amendment.[16]  Plaintiffs then filed their Second Amended Complaint, alleging a single claim for violation of the Carmack Amendment against Ainslie, Leija, Kimmel, Van Kirk, Wheeling, and

---

[12] Id. ¶¶ 20, 28.

[13] Id. ¶¶ 21–30.

[14] Contractors Cargo and Trailblazer were both Defendants in this suit until the Court dismissed Plaintiffs' claims against them on February 18, 2015.  See Document No. 75.

[15] Document No. 1.  The Court denied Plaintiffs' motion to remand.  Document No. 38.

[16] Document No. 75.

Ortiz.[17]  Plaintiffs also move for reconsideration of the Court's dismissal of Plaintiffs' claims against Trailblazer, seeking leave to file a Third Amended Complaint adding claims against Trailblazer based on new evidence.[18]  Contractors Cargo and Trailblazer move for entry of final judgment based on the Court's dismissal of Plaintiffs' claims against them.[19]  Van Kirk and Kimmel move to dismiss the case under Rule 12(b)(1), and Wheeling, Ortiz, Van Kirk, and Kimmel move to dismiss the claims against them under Rule 12(b)(6).[20]  Plaintiffs and Van Kirk and Kimmel have filed cross-motions for summary judgment regarding the applicability of a limitation of liability provision in the contract between Contractors Cargo and Hansa Meyer.[21]  Finally, Plaintiffs move to strike various motions and evidence, and seek Rule 11 sanctions against Van Kirk and Kimmel.[22]

---

[17] Document No. 79.  Although Wheeling and Ortiz--unlike the other Defendants--had not filed a motion to dismiss Plaintiffs' prior pleading, Plaintiffs concluded that "because Plaintiffs' claims against Defendants Wheeling and Ortiz are similar to Plaintiffs' claims against the other Defendants, Plaintiffs believe the Court would view such claims as Carmack Amendment claims," and repled those claims accordingly.  Id. at 3 n.2.

[18] Document No. 85.

[19] Document Nos. 86, 87.

[20] Document Nos. 91, 96, 109, 126.

[21] Document Nos. 93, 113.

[22] Document Nos. 116-118.

## II. <u>Motion for Reconsideration</u>

Plaintiffs move under Rule 59(e) for reconsideration of the Court's dismissal of their state law claims against Trailblazer based on "additional evidence previously unknown to Plaintiffs showing that Trailblazer was far more involved with the transport than Plaintiffs knew when they filed their First Amended Complaint," and seek leave to file a Third Amended Complaint to assert claims against Trailblazer.[23]

"A FRCP 59(e) motion to reconsider should not be granted unless there is: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; [or] (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." <u>Brown v. Mississippi Co-op Extension Serv.</u>, 89 F. App'x 437, 439 (5th Cir. 2004) (citations omitted).  Where, as here, the motion to reconsider is based on an alleged discovery of new evidence, it should be granted only if (1) the facts discovered are of such a nature that they would probably change the outcome, (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence, and (3) the facts are not merely cumulative or impeaching.  <u>Johnson v. Diversicare Afton Oaks, LLC</u>, 597 F.3d 673, 677 (5th Cir. 2010) (citation omitted).

---

[23] Document No. 85 at 2.

The "newly discovered evidence" on which Plaintiffs rely
consists of testimony of Jake Kimmel (the cousin of Defendant
Claude Joseph Kimmel) given at his deposition on November 24,
2014.[24]   The Court's Memorandum and Order dismissing Plaintiffs'
claims against Trailblazer was not entered until February 18, 2015,
almost three months later.[25]   Thus, the evidence was not newly
discovered after entry of the Court's Order, and is not a proper
basis for reconsideration under Rule 59(e).[26]   *See* Pejouhesh v.
Capital One Bank, No. CIV.A. H-14-2060, 2015 WL 539549, at *2 (S.D.
Tex. Feb. 9, 2015) (Rosenthal, J.) ("A Rule 59(e) motion may not be
used to relitigate old matters or to raise arguments or present
evidence that could have been raised before the entry of the
judgment or order.") (citing Rosenzweig v. Azurix Corp., 332 F.3d
854, 863 (5th Cir. 2003)).

---

[24] Document No. 85 at 2, 4.

[25] Document No. 75.

[26] Plaintiffs argue that they "could not have previously
brought this evidence to the Court's attention in their briefing
because the new evidence was not discovered until . . . after
Plaintiffs' briefing deadline," and "because of the voluminous
briefing pending before the Court [including four motions to
dismiss] it would have been inappropriate for Plaintiffs to seek
leave to amend their complaint while all of these filings were
pending before the Court."   Document No. 97 at 4-6.   These
considerations do not excuse Plaintiffs' lack of diligence to seek
leave either to file supplemental briefing or to amend their
complaint in light of what Plaintiffs believe was newly discovered
evidence.   Instead, Plaintiffs waited until the Court's adverse
ruling and then moved to reconsider.

In the alternative, Plaintiffs seek leave to file a new Carmack Amendment claim based on the "newly discovered evidence," which purportedly shows "that Trailblazer supplied equipment and services for this transport thereby making Trailblazer a 'carrier' under the Carmack Amendment."[27] Plaintiffs' proposed Carmack Claim alleges that:

> Defendant Trailblazer supplied its transportation services in the form of instructions and advice to its pilot car drivers during the transport of the APU skid. Defendant Trailblazer also supplied equipment such as a cell phone, orange flags, and 'oversized' signs to Defendant Claude Kimmel. Therefore, to the extent Defendant Trailblazer can be considered a 'carrier,' Plaintiffs alternatively assert a Carmack Amendment claim against Defendant Trailblazer.[28]

Assuming that the advice and supplies provided by Trailblazer were used by persons engaged in the carriage of the purification skid, which Trailblazer questions,[29] Plaintiffs cite to no authority holding that such a *de minimis* contribution as the provision of advice, a cell phone, flags, and signs is sufficient to establish liability as a "carrier" under the Carmack Amendment.[30] *See* Foman

---

[27] Document No. 85 at 8.

[28] Document No. 85-2 ¶ 45.

[29] *See* Document No. 95 at 18.

[30] The Interstate Commerce Act's definition of a carrier includes "a person providing motor vehicle transportation for compensation," and "transportation" includes:

(A) a motor vehicle, vessel, warehouse, wharf, pier,

v. Davis, 83 S. Ct. 227, 230 (1962) (listing "futility of amendment" as a reason to deny leave to amend).  Because such an amendment would be futile, and because Plaintiffs base their motion on evidence that was known to Plaintiffs before the Court dismissed their claims against Trailblazer, Plaintiffs' motion to reconsider and for leave to file a Third Amended Complaint is denied.

## III. Motion for Entry of Final Judgment

Contractors Cargo moves under Rule 54(b) for entry for final judgment in its favor, which motion Trailblazer adopts and joins.[31] Although Plaintiffs have filed no response to the motion, Rule 54(b) motions are disfavored and should be granted only "when there exists some danger of hardship or injustice through delay which

---

dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(3), (14), (16), (23).  Under the *ejusdem generis* cannon of construction, the specific statutory examples preceding the general language of "equipment of any kind related to the movement of passengers or property," preclude a finding that vendors of common items such as cell phones, flags, and signs used by actual carriers thereby themselves become "person[s] providing motor vehicle transportation for compensation" within the meaning of the Carmack Amendment.

[31] Document Nos. 86, 87.

would be alleviated by immediate appeal." <u>PYCA Indus., Inc. v.</u>
<u>Harrison Cnty. Waste Mgmt.</u>, 81 F.3d 1412, 1421 (5th Cir. 1996).
Neither Contractors Cargo nor Trailblazer has shown any danger of
hardship or injustice through delay that would be alleviated by
an immediate appeal.  Accordingly, and consistent with the Fifth
Circuit's disfavor of piecemeal appeals, Contractors Cargo's Motion
for Entry of Final Judgment under Rule 54(b) is denied.

## IV. Rule 12(b)(1) Motion to Dismiss

### A.  Legal Standard

"When a Rule 12(b)(1) motion is filed in conjunction with
other Rule 12 motions, the court should consider the Rule 12(b)(1)
jurisdictional attack before addressing any attack on the merits."
<u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  Under
Rule 12(b)(1), a party can seek dismissal of an action for lack of
subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The question
of subject matter jurisdiction is for the court to decide even
if the question hinges on legal or factual determinations.  *See*
<u>Ramming</u>, 281 F.3d at 161.  The Fifth Circuit distinguishes between
"facial" and "factual" attacks to subject matter jurisdiction.
<u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981).  A
facial attack consists of a Rule 12(b)(1) motion unaccompanied by
supporting evidence, challenging the court's jurisdiction based
solely on the pleadings, the allegations in which must be accepted

11

as true.  *See* id.  When a party submits evidence along with its motion to dismiss, it has made a factual attack on the court's jurisdiction.  Id.  In a factual attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."  Id.

B.    Analysis

In their Motion to Dismiss, Van Kirk and Kimmel argue under Rule 12(b)(6) that Plaintiffs have not alleged facts showing their standing as owners or shippers of the damaged cargo, and on the last page of this motion add an assertion under Rule 12(b)(1) that Plaintiffs lack standing to bring this suit.  Their conclusory "argument" consists of two sentences:

> As discussed above, while Plaintiffs have alleged that they are entitled to damages, Defendants challenge their standing and state that they do not have standing to bring suit.  Plaintiffs cannot establish the elements of standing: injury in fact, causation and redressability.[32]

Two months later, long after the dispositive motions deadline, Van Kirk and Kimmel filed a "Supplement" to this motion, arguing that Plaintiffs lack standing because they have received almost $2 million from their insurers for the loss to the purification

---

[32] Document No. 96 at 8.

skid, and the insurers now own the rights to the claim for loss.[33] Van Kirk and Kimmel attach some excerpts of deposition testimony to their "Supplement," and Plaintiffs have responded with evidence pertaining to both motions, which are therefore construed as factual attacks.

Although Plaintiffs in their Second Amended Complaint allege that they "procured a very specialized piece of equipment called a purification skid" for use in Mexico, Van Kirk and Kimmel argue that Plaintiffs have not adequately alleged ownership of the purification skid.[34] This surprising assertion is totally at odds with Van Kirk's and Kimmel's prior filings in which they themselves acknowledged and stated that Plaintiffs owned the purification skid.[35] This is not a matter of genuine dispute: the uncontroverted evidence is that Plaintiffs purchased the purification skid and arranged for its transportation to Mexico.[36]

---

[33] Document No. 126.

[34] Document No. 96 at 4.

[35] *See* Document No. 25 at 2 ("The transport truck was hauling a 63-ton [purification skid] *owned by Plaintiffs* and bound for Pesqueria, Mexico.") (emphasis added); Document No. 51 at 2 ("As the Court has stated, this suit arises out of damage to *Plaintiffs' property*--an APU Skid--while it was being transported by truck from Texas to Mexico.") (emphasis added).

[36] *See, e.g.*, Document No. 107-15 (invoice for purification skid made out to Air Liquide Process and showing final destination as "TERNIUM / AIR LIQUIDE MEXICO S DE RL DE CV."); Document No. 107-19 (Transportation Entry and Manifest of Goods Subject to CPB Inspection and Permit for purification skid showing Air Liquide Process as importer and Air Liquide Mexico as consignee).

Van Kirk's and Kimmel's Supplement, moreover, implicitly acknowledges that Plaintiffs owned the skid, for now they contend that Plaintiffs lack standing because their insurers already have compensated them for their loss and the insurers were subrogated into Plaintiffs' rights.[37]   Van Kirk and Kimmel exhibit a January 14, 2014 Subrogation Form in which Air Liquide Process on behalf of Air Liquide Mexico acknowledged receipt of a total of $1,806,396 from five insurance companies "[f]or covered physical damage to property," namely, "1 APU SKID hit by a train in Magnolia, Texas on March 04th 2013."[38]   The Subrogation Form further provides that "the above mentioned insurance companies are subrogated into all rights, actions and recoveries arising against all liable parties (carriers and/or others) for the above mentioned loss and damage."[39]

Van Kirk's and Kimmel's standing argument based on subrogation rights fails for several reasons.   First, Plaintiffs produce a written assignment in which the five insurers identified by Van Kirk and Kimmel assigned and transferred their subrogation rights back to Plaintiff Air Liquide Process.[40]   Second, the collateral

---

[37] *See* Document No. 126.

[38] Document No. 126-2.

[39] Id.

[40] Document No. 128-9 at 2 of 3 to 3 of 3.   Moreover, the original subrogation did not involve all of Plaintiffs' claims, but only those "[f]or covered physical damage" to the purification

source rule applies.  As Plaintiffs correctly argue, under the collateral source rule, a wrongdoer cannot benefit from insurance independently procured by the injured party and to which the wrongdoer was not privy.  *See* <u>Davis v. Odeco, Inc.</u>, 18 F.3d 1237, 1243 (5th Cir. 1994) ("The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor."); <u>Brown v. Am. Transfer & Storage Co.</u>, 601 S.W.2d 931, 934 (Tex. 1980) ("The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy.") (trucker not entitled to benefit of third party insurance payment for damaged goods); *see also* <u>Custom Rubber Corp. v. ATS Specialized, Inc.</u>, 633 F. Supp. 2d 495, 515 (N.D. Ohio 2009) (collateral source rule applies to Carmack Amendment claims).  Thus, Plaintiffs' receipt of insurance payments from insurance independently procured by them and covering part of their loss has no bearing on Plaintiffs' standing to

---

skid.  Plaintiffs seek recovery not only of the replacement cost of the skid but also of numerous other costs directly arising from its destruction, which claims total almost $7.7 million.  *See* Document No. 128-10 at 2 of 5 (itemized list of damages claimed).  Thus, the $1.8 million in insurance benefits Plaintiffs received would not preclude their recovery of their remaining damages even in the absence of the collateral source rule, discussed next.

recover from Van Kirk and Kimmel.  Van Kirk's and Kimmel's motion to dismiss for lack of subject matter jurisdiction is denied.

C.   Plaintiffs' Request for Sanctions

In their responses to each of Van Kirk's and Kimmel's Rule 12(b)(1) motions, Plaintiffs "ask the Court to exercise its discretion under Rule 11 and award them their attorneys' fees and costs for having to respond" to each motion because Van Kirk's and Kimmel's arguments are entirely lacking in merit.[41]  Given this record, Plaintiffs' motion would deserve serious consideration if Plaintiffs themselves had complied with Rule 11.  "A motion for sanctions *must be made separately from any other motion* and must describe the specific conduct that allegedly violates Rule 11(b)," which Plaintiffs have not done.  FED. R. CIV. P. 11(c)(2) (emphasis added).  The requests for attorney fees and costs as a sanction for violations of Rule 11(b) is therefore denied.

V.   Rule 12(b)(6) Motions to Dismiss

A.   Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a

---

[41] Document No. 107 at 17; Document No. 128 at 13.

complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

B.   <u>Van Kirk's and Kimmel's Motion to Dismiss</u>

Van Kirk and Kimmel argue in their Rule 12(b)(6) motion that Plaintiffs have not pled facts "to support claims for special damages under Carmack."[42]  "The Carmack Amendment allows a shipper to recover damages from a carrier for 'actual loss or injury to the property' resulting from the transportation of cargo in interstate commerce."  <u>Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.</u>, 414 F.3d 546, 549 (5th Cir. 2005) (citing 49 U.S.C. § 14706(a)(1)).  "A carrier's liability under the Carmack Amendment includes all reasonably foreseeable damages resulting from the breach of its contract of carriage, 'including those resulting from nondelivery of the shipped goods as provided by the bill of lading.'"  <u>Id.</u> (citing <u>Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R. Co.</u>, 721 F.2d 483, 485 (5th Cir. 1983)); *see also* <u>Camar Corp. v. Preston Trucking Co.</u>, 221 F.3d 271, 277 (1st Cir. 2000) ("The Carmack Amendment incorporates common law principles of damages, and permits recovery of lost profits unless they are speculative.") (citations omitted). The Fifth Circuit has explained that

> Both general and special damages may be recovered under the Carmack Amendment.  General damages are those that are foreseeable at the time of contracting.  Special damages are those that result from a party's breach of

---

[42] Document No. 96 at 5.  Van Kirk and Kimmel also argue that Plaintiffs have failed to allege facts showing that they are owners or shippers of the purification skid.  As discussed above, this argument is without merit.

contract but are not reasonably foreseeable.  Special
damages generally are not recoverable in a breach of
contract action absent actual notice to the defendant of
special circumstances from which such damages might
arise.

Nat'l Hispanic Circus, 414 F.3d at 549 (citations omitted).  Van
Kirk and Kimmel cite no authority establishing that special damages
must be pled with particularity in Carmack Amendment cases.[43]  *Cf.*
New Process Steel Corp. v. Union Pac. R. Co., 91 F. App'x 895, 899-
900 (5th Cir. 2003) (reversing summary judgment where district
court had held that claim under railroad provision of Carmack
Amendment failed because plaintiff did not plead that its
consequential damages were specifically foreseeable) ("Under our
Circuit's precedent, . . . a Carmack Amendment plaintiff is not
required to show that its consequential damages were specifically
foreseeable").

Plaintiffs' Second Amended Complaint employs the statutory
language ("*actual* loss or injury to the property,") in praying for
recovery of "actual damages," including the following:  inspection
assessment of the damage to the purification skid; assessment of a
replacement skid; storage fees; costs associated with locating,
dismantling, transporting, revamping and installing the replacement

_____

[43] Van Kirk and Kimmel cite numerous cases involving either the
adequacy of evidence of special damages at summary judgment and
trial, or the requirement to allege special damages in business
disparagement and libel cases, for which special damages are an
essential element.  Document No. 96 at 5-8.

skid; costs and penalties incurred for delay; additional site running costs, including labor, expenses, management and supervision; replacement value of the skid in mitigation of repair costs; loss of use of the skid, including customer claims; increased costs; out of pocket damages; lost profits; and loss of goodwill.[44]  Although Plaintiffs do not list their general damages separately from their special damages, it would appear that most are general damages foreseeable at the time of contracting--for example, allegations for the recovery of damages for the inspection assessment of damages done to the skid and the costs for purchase of its replacement and shipment.  Nonetheless, some of the claimed losses would appear to be special damages not generally recoverable.  There is no requirement in the statute and none known to the Court in case law that Plaintiffs in a Carmack Amendment case carve out from Plaintiffs' actual damages and identify separately at the pleading stage which of Plaintiffs' actual damages are special damages requiring Plaintiffs to prove at trial that Defendants had actual notice of special circumstances that would subject them to liability for special damages.

Plaintiffs' pleading that the purification skid was "a very specialized piece of equipment" and "a sophisticated component of refinery processing equipment" that Defendants knew was being "transported to Air Liquide's plant in Pesqueria, Mexico" on a

---

[44] Document No. 79 at 15.

"custom-made, specialized lowboy trailer over 140 feet long and 10 feet wide," combined with their claim for both general and special damages, is sufficient notice alleging that Defendants were on notice of circumstances that would subject them to liability for special damages. At least at this pleading stage, the allegations are sufficient to state a plausible cause of action for special damages under Rule 12(b)(6). Accordingly, Van Kirk's and Kimmel's Rule 12(b)(6) motion is denied.

C.    Wheeling's and Ortiz's Motion to Dismiss

Wheeling and Ortiz move to dismiss Plaintiffs' claims against them, arguing that the Carmack Amendment provides a cause of action against only a receiving or delivering carrier, and that because they were neither, Plaintiffs have failed to state a claim against them.[45] Plaintiffs respond that (1) based on the Court's reasoning in its prior ruling, Plaintiffs' claims against Wheeling and Ortiz arise under the Carmack Amendment, (2) Wheeling and Ortiz were receiving or delivering carriers, and (3) even if Wheeling and Ortiz were intermediary carriers, the Carmack Amendment allows Plaintiffs to recover from them.[46]

---

[45] Document No. 91.  Van Kirk and Kimmel join in Wheeling and Ortiz's motion.  Document No. 109.

[46] Document No. 98.

21

In the Memorandum and Order dated February 18, 2015, it was determined that Plaintiffs had alleged facts establishing that Ainslie, Van Kirk, and Kimmel were carriers under the broad definitions in the Carmack Amendment and the Interstate Commerce Act based on their participation as part of the transportation crew for carriage of the purification skid.[47]  Plaintiffs correctly argue that by the same logic, Wheeling and Ortiz, as the bucket truck supplier and operator, and integral components of the carriage team, are also carriers under the Carmack Amendment.[48]  The parties did not argue in the earlier motions whether any Defendants were *receiving* or *delivering* carriers.  The fact that Plaintiffs' claims are preempted by the Carmack Amendment does not necessarily allow them to bring Carmack claims against all Defendants who are carriers.  *See* Tech Data Corp. v. Mainfreight, Inc., No. 8:14-CV-1809-T-23MAP, 2015 WL 1546639, at *1 (M.D. Fla. Apr. 7, 2015) ("Tech Data's argument ignores the distinction between an inapplicable statute and an applicable statute that creates no cause of action.  The Carmack Amendment governs this action (even if Central Transport is a connecting carrier), but the Carmack Amendment creates no claim for a cargo owner to allege against a connecting carrier.  Instead, under the Carmack Amendment, a cargo owner may sue the receiving or delivering carrier for the fault of

---

[47] Document No. 75 at 9, 12.

[48] Document No. 98 at 4-5.

22

a connecting carrier.") (citing <u>CNA Ins. Co. v. Hyundai Merch.</u> <u>Marine Co.</u>, 747 F.3d 339, 353 (6th Cir. 2014)).

The case law is generally consistent in holding that the Carmack Amendment gives the holder of a bill of lading a right to recover only against the receiving carrier--*i.e.*, the carrier that issued the bill of lading and received the cargo for transportation--and the delivering carrier, defined at 49 U.S.C. § 14706(a)(1) as "the carrier performing the line-haul transportation nearest the destination." *See* <u>Arnold J. Rodin, Inc.</u> <u>v. Atchison, T. & S. F. Ry. Co.</u>, 477 F.2d 682, 688 (5th Cir. 1973) ("Under the Carmack Amendment the holder of the bill of lading is given a cause of action only against the receiving or delivering carrier."); <u>5K Logistics, Inc. v. Daily Exp., Inc.</u>, 659 F.3d 331, 335 (4th Cir. 2011) ("[Section 14706] allows shippers to bring suit against either the initial carrier (the issuer of the bill of lading) or the delivering carrier, removing 'the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment.'") (citing <u>Reider v. Thompson</u>, 70 S. Ct. 499, 502 (1950)); <u>Strickland Transp.</u> <u>Co. v. Johnston</u>, 238 S.W.2d 717, 719 (Tex. Civ. App.-Amarillo 1951) ("[T]here is no provision of the Carmack Amendment which places liability on the intermediate carrier."); <u>Tokio Marine & Fire Ins.</u> <u>Co. v. Amato Motors, Inc.</u>, No. 90 C 4823, 1995 WL 493434, at *4 (N.D. Ill. Aug. 15, 1995) ("Unlike 'initial' and 'delivering'

carriers, those carriers whose work is performed after the original shipment but before the journey's final leg--the so-called 'intermediate connecting carriers'--are not amenable to suit under the Carmack Amendment."), *aff'd sub nom.* <u>Tokio Marine & Fire Ins. Co. v. Chicago & Nw. Transp. Co.</u>, 129 F.3d 960 (7th Cir. 1997) (citations omitted).[49]

Plaintiffs argue that most of the cases upon which Wheeling and Ortiz rely were governed by an older version of the Carmack Amendment, and that the current version provides for recovery from the carrier responsible for the loss.[50]  Section 14706 does provide for recovery from "the carrier over whose line or route the loss or injury occurred," but only by a receiving or delivering carrier seeking to recover the amount paid to the cargo owners.[51]   In contrast, only the receiving carrier and "any other carrier that delivers the property and is providing transportation or service

---

[49] Although many of these cases involve the section of the Carmack Amendment governing rail carriers, the liability provision therein is not materially different from that of Section 14706 governing motor carriers.  *Compare* 49 U.S.C. § 11706(a), with <u>id.</u> § 14706(a).

[50] Document No. 98 at 7-10.

[51] *See* 49 U.S.C. § 14706(b) ("The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person.").

subject to jurisdiction . . . are liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1).[52]

Plaintiffs argue that Wheeling and Ortiz acted as receiving and/or delivering carriers, and not as intermediary carriers.[53] The receiving carrier liable under Section 14706 is the carrier that "issue[s] a receipt or bill of lading for property it receives for transportation," 49 U.S.C. § 14706(a)(1), and there is no allegation that either Wheeling or Ortiz issued a bill of lading for the purification skid. "A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination." Id. Plaintiffs argue that "the pertinent definitions . . . as well as the Court's analysis in its [ February 18, 2015] Memorandum and Order, show that there can be more than one . . . delivering carrier," and that Wheeling and Ortiz "were a necessary and integral part of the transportation team for receiving and delivering the skid."[54]

---

[52] The Carmack Amendment's venue provision provides that "[a] civil action under this section may be brought against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 14706(d)(2). This provision evidently refers to claims brought by receiving or delivering carriers under Section 14706(b).

[53] Document No. 98 at 5-7.

[54] Id. at 6-7.

None of the case law upon which Wheeling and Ortiz rely establishes that there can be only one delivering carrier. Indeed, such a limitation would not advance the overriding purpose of the Carmack Amendment, which completely preempts this field, especially in a case such as this where there is involved the overland carriage of a massive unit of freight requiring a transportation team concurrently composed of multiple motor vehicles and persons providing specialized services all acting in concert as a unit to perform the "line-haul transportation nearest the destination," 49 U.S.C. § 14706(a). In contrast, most of the case law applying the Carmack Amendment has arisen in conventional settings where typically there are series of consecutive carriers and, to be sure, a principal purpose of the Amendment was to resolve the frequent problem of cargo arriving damaged with no way of knowing where amongst a *series* of carriers the damage occurred. *See* <u>Rodin</u>, 477 F.2d at 688 ("The purpose of the Carmack Amendment was to make the initial and delivering carriers responsible so that the lawful holder of a bill of lading does not have to search out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods. The initial or delivering carrier could then recover damages from the connecting carrier on whose line the loss or damage to the property was sustained."); *see also* <u>Tokio Marine</u>, 1995 WL 493434, at *4 (defining intermediate connecting carriers not subject to liability as "those carriers

whose work is performed after the original shipment but before the journey's final leg"). Wheeling and Ortiz argue that they were not a receiving or delivering carrier. Plainly, however, they were not intermediate connecting carriers performing their work after the original shipment but before the final leg of the transport, which is the only other category of carrier contemplated in the Carmack Amendment and the case law. The allegations are that Wheeling and Ortiz provided bucket truck services as part of the line-haul transportation from Houston, Texas until the cargo's destruction in Magnolia, Texas, and, at this pleading stage, Plaintiffs have plausibly pled that Wheeling and Ortiz were part of a team operating together as delivering carriers subject to liability under the Carmack Amendment. Accordingly, Wheeling's and Ortiz's motion to dismiss is denied.

## VI. Motions for Summary Judgment

Plaintiffs move for a partial summary judgment ruling that their damages are not limited to $100,000 by a limitation of liability provision in the contract between Hansa Meyer and Contractors Cargo (the "Hansa Meyer/Contractors Cargo Contract").[55] Talleres Willie and Ainslie filed a response in opposition, and Van

---

[55] Document No. 93.

27

Kirk and Kimmel filed a response and "counter-motion for summary judgment" arguing that their liability is limited to $100,000.[56]

A.   Motion to Strike

Plaintiffs' objections (Document No. 117) to a series of unauthenticated documents produced by Van Kirk and Kimmel at Document No. 113-4 in opposition to Plaintiffs' motion for summary judgment and in support of their counter-motion for summary judgment are SUSTAINED, and the unauthenticated documents are STRICKEN.

Plaintiffs' objection (Document No. 117) to certain portions of the deposition testimony of Frank Scheibner, Hansa Meyer's President and Chief Executive Officer, is SUSTAINED IN PART, namely, as to Scheibner's hearsay and/or speculative testimony that Air Liquide had notice or actual knowledge of the limitation of liability provision contained in the Hansa Meyer/Contractors Cargo Contract, and the objection is otherwise OVERRULED.

---

[56] Document Nos. 106, 113.  Van Kirk's and Kimmel's response and counter-motion compose a single document, which was filed twice at Document Nos. 108 and 113.  For ease of reference, the Court refers only to the latter filing.

Plaintiffs' Motion to Strike Counter-Motion for Summary Judgment as Untimely (Document No. 116) is denied.  Plaintiffs have presented no evidence of any prejudice caused by Van Kirk's and Kimmel's late filing of their counter-motion for summary judgment, which was combined with their response to Plaintiffs' motion and addressed the same issues.  Plaintiffs' response to Van Kirk's and Kimmel's counter-motion was combined with and indistinguishable from their reply in support of their own motion.

B.   <u>Fact Issues Preclude Summary Judgment</u>

It is uncontroverted that the Hansa Meyer/Contractors Cargo Contract includes within its terms a separate limitation of liability provision, not a mere incorporation by reference of a very similar clause in Contractors Cargo's tariff, which tariff Plaintiffs contend is inapplicable to carriage from the United States to Mexico.  The Limited Liability clause in the Hansa Meyer/Contractors Cargo Contract states:

> *Limited Liability:*
>
> Carrier's liability for loss of or damage to freight, including recovery of damaged freight, in Carrier's possession shall be subject to release value of $2.50 per pound to a maximum of $100,000 per load as provided in Tariff ICC-CCC 400, unless a greater amount is declared and accepted, in writing, by Carrier and Customer has paid the cost of excess valuation.[57]

After carefully reviewing the submissions and summary judgment evidence, it appears that genuine issues of material fact have been raised on (1) whether Plaintiffs had notice of the limitation of liability provision in the Hansa Meyer/Contractors Cargo Contract or authorized Hansa Meyer as their agent to agree to such a limitation, and (2) whether Plaintiffs or their agent had a reasonable opportunity to choose between two or more levels of liability.  Accordingly, neither Plaintiffs nor Van Kirk and Kimmel

---

[57] Document No. 93-1 at 1.

29

are entitled to summary judgment on the limitation of liability's applicability.

## VIII. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Plaintiffs' Motion for Reconsideration Regarding Trailblazer Pilot Car Services, LLC, and Motion for Leave to File Third Amended Complaint (Document No. 85), Motion for Summary Judgment Regarding Limitation of Liability (Document No. 93), and Motion to Strike Counter-Motion for Summary Judgment as Untimely (Document No. 116) are all DENIED, and Plaintiffs' Motion to Strike and Response to Pilot Car Defendants' Motion for New Docket Control Order and Status Conference (Document No. 118) is DENIED AS MOOT; and it is further

ORDERED that Defendant Contractors Cargo Company's Motion for Entry of Final Judgment (Document No. 86), in which Defendant Trailblazer Pilot Car Services, LLC joins, is DENIED; and it is further

ORDERED that Defendants Wheeling Equipment Company, Inc.'s and George Ortiz's Joint Motion to Dismiss the Second Amended Complaint (Document No. 91), in which Defendants Charles Van Kirk d/b/a Slingshot Pilot Car Services and Claude Joseph Kimmel d/b/a Freedom Pilot Car join, is DENIED; and it is further

ORDERED that Defendants Charles Van Kirk d/b/a Slingshot Pilot Car Services's and Claude Joseph Kimmel d/b/a Freedom Pilot Car's Third Motion to Dismiss (Document No. 96), Motion for New Docket Control Order and Status Conference (Document No. 112), Counter-Motion for Summary Judgment (Document No. 113), and Supplement to Third Motion to Dismiss (Document No. 126) are all DENIED; and it is further

ORDERED that Defendant Talleres Willie, Inc.'s and Bernardo Ainslie's Motion to Extend Time to Respond to Plaintiffs' Motion for Summary Judgment (Document No. 100) is GRANTED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 31st day of July, 2015.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE