Case 4:14-cv-00211   Document 166   Filed in TXSD on 12/15/15   Page 1 of 14

United States District Court
Southern District of Texas

**ENTERED**
December 15, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AIR LIQUIDE MEXICO S. de R.L. de C.V. and AIR LIQUIDE PROCESS AND CONSTRUCTION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TALLERES WILLIE, INC., BERNARDO AINSLIE, FELIX NINO LEIJA, TRAILBLAZER PILOT CAR SERVICES, LLC, CLAUDE JOSEPH KIMMEL d/b/a FREEDOM PILOT CAR SERVICES, CHARLES VAN KIRK d/b/a SLINGSHOT PILOT ESCORT SERVICES, WHEELING EQUIPMENT COMPANY, INC., GEORGE ORTIZ, and CONTRACTORS CARGO COMPANY, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § §    CIVIL ACTION NO. H-14-211 |

MEMORANDUM AND ORDER

Pending is Defendants Charles Van Kirk d/b/a Slingshot Pilot Car Services and Claude Joseph Kimmel d/b/a Freedom Pilot Car's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 152). After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows.

I. Background

The background for this action brought by Plaintiffs Air Liquide Mexico S. de R.L. de C.V. ("ALM") and Air Liquide Process and Construction, Inc. ("ALPC") (collectively "Plaintiffs") is

recited in the Court's Orders signed February 18, 2015 (Document No. 75) and July 31, 2015 (Document No. 130), and need not be repeated here. Suffice it to say that after the Fifth Circuit issued its opinion in In re Wheeler, 612 Fed. App'x 763, 768 n.4 (5th Cir. 2015) (holding that a pilot car does not constitute a carrier under the Carmack Amendment), the Court vacated its prior orders that dismissed Plaintiffs' state law claims against Defendants Charles Van Kirk d/b/a Slingshot Pilot Car Services ("Van Kirk"), Claude Joseph Kimmel d/b/a Freedom Pilot Car ("Kimmel") (collectively "Pilot Car Defendants"), and granted leave for Plaintiffs to file a Third Amended Complaint (Order dated August 27, 2015, Document No. 148).

The Pilot Car Defendants now move for partial dismissal of Plaintiffs' Third Amended Complaint with respect to (1) Plaintiffs' claim that the Pilot Car Defendants violated a statutory duty under Chapter 545 of the Texas Transportation Code (Count III) and (2) Plaintiffs' claim that Pilot Car Defendants engaged in a joint enterprise (Count VI).[1]

## II. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure

---

[1] Document Nos. 152, 162. Although the motion asks for dismissal of the Third Amended Complaint, Pilot Car Defendants later clarified that they seek dismissal of only the two claims stated. Document No. 162 at 1 of 12.

to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

III. <u>Analysis</u>

A. <u>Chapter 545 of the Texas Transportation Code</u>

Pilot Car Defendants move to dismiss Plaintiffs' negligence claims premised on the allegation that "[Pilot Car] Defendants violated any statutory duty under Chapter 545 of the Texas Transportation Code."[2] "The primary rule in statutory interpretation is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent." <u>CenterPoint Energy Hou. Elec. LLC v. Harris Cty. Toll Rd. Auth.</u>, 436 F.3d 541, 545 (5th Cir. 2006) (citing <u>Union Bankers Ins. Co. v. Shelton</u>, 889 S.W.2d 278, 280 (Tex. 1994)). "The Legislature's intent is determined from the plain and common meaning of the words used." <u>St. Luke's Episcopal Hosp. v. Agbor</u>, 952 S.W.2d 503, 505 (Tex. 1997).

Chapter 545, which specifically defines the rules for the operation and movement of vehicles, is found in Subtitle C of Title 7 of the Transportation Code, which sets out the "Rules of the Road." At the outset of Chapter 545, the term "Operator" is defined to mean, "as used in reference to a vehicle, *a person* who drives or has physical control of *a vehicle*." TEX. TRANSP. CODE ANN. § 541.001 (emphasis added). Thus, the statute defines "operator" in the singular, implicitly recognizing that a vehicle has one

---

[2] Document No. 162 at 1 of 12.

operator at a time who "drives or has physical control" of the vehicle. Because they were driving or in physical control of their respective escort vehicles, each Pilot Car Defendant was an operator under this section. Concommitantly, neither Pilot Car Defendant was an operator of any vehicle other than his own or of the tractor pulling the trailer upon which the massive 60 feet long purification skid was being carried. In other words, neither Pilot Car Defendant was "driv[ing] or in physical control" of the tractor/trailer vehicle. Therefore, any statutory duty the Pilot Car Defendants owed by virtue of their status as operators under Chapter 545 arose and pertained only to the operation of their own escort vehicles.[3]

Plaintiffs allege that Pilot Car Defendants violated several sections under Chapter 545.[4] In particular, Plaintiffs allege that the Pilot Car Defendants were statutorily obligated to notify the

---

[3] The parties dispute whether the duties arising under Texas Transportation Code are delegable. Document No. 150 ¶ 52; Document No. 152 at 4 of 9. "As a general rule, when a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." MBank El Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153 (Tex. 1992)); see also RESTATEMENT (2D) OF TORTS § 424, cmt. a (1965) ("whenever a statute or administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others . . . the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor."). Here, the rules governing the operation of a motor vehicle were imposed "on the basis of concerns for public safety," and the statutory duties imposed under the Texas Transportation Code are non-delegable.

[4] Document No. 150 ¶ 52.

5

railroad because § 545.255 "requires one who transports 'heavy equipment' to notify the railroad prior to attempting to cross railroad tracks."[5] While Plaintiffs are correct that § 545.255(b) imposes a notice requirement on the operator of the vehicle--this requirement is only imposed on those who operate:

    (1)  a crawler-type tractor, steam shovel, derrick, or roller; and

    (2)  any other equipment or structure with:

        (A)  a normal operating speed of 10 miles per hour or less; or

        (B)  a vertical body or load clearance of less than one-half inch per foot of the distance between two adjacent axles or less than nine inches measured above the level surface of a roadway.

TEX. TRANSP. CODE ANN. § 545.255(a).

Here, Plaintiffs allege that Felix Nino Leija was operating the vehicle transporting the skid, and Pilot Car Defendants were separately operating individual "escort vehicles" that proceeded in front of and behind the vehicle transporting the skid.[6] Plaintiffs have not alleged that either Pilot Car Defendant was operating a vehicle described in § 545.255(a), and by its own terms § 545.255

---

[5] Document No. 150 ¶ 52. Under § 545.255(b), "[a]n operator of a vehicle or equipment may not move on or across a track at a railroad grade crossing unless the operator has given notice to a station agent of the railroad and given the railroad reasonable time to provide proper protection at the crossing."

[6] Document No. 150 ¶¶ 15-17.

"applies only" to those specified vehicles. Thus, the Pilot Car Defendants did not have or violate a statutory duty under § 545.255, and Plaintiffs have failed to state a claim upon which relief can be granted under § 545.255(b).[7]

Plaintiffs' Third Amended Complaint also alleges negligence *per se* against the Pilot Car Defendants for violations of § 545.051(a), which requires an operator to "drive on the right half of the roadway"; § 545.056(a), which prohibits an operator from driving on the left side of the roadway "within 100 feet of an intersection or railroad grade crossing in a municipality"; and § 545.302(a)(8) and (9), which prohibit an operator from stopping, standing, or parking "on a railroad track" or "where an official sign prohibits stopping." Plaintiffs allege that the "load" on the lowboy trailer was stopped on the tracks and driven on the wrong side of the road in violation of these statutes,[8] but Plaintiffs do not allege that either of the Pilot Car Defendants violated any of

---

[7] Section 545.255 also contains a penal sanction, *see* § 545.255(e), an additional reason that forecloses Plaintiffs' argument that the Pilot Car Defendants can be held liable for the tractor/trailer operator's statutory violations. "It is a common-law 'maxim that penal statutes should be strictly construed." Nautilus Ins. Co. v. Int'l House of Pancakes, Inc., 622 F. Supp.2d 470, 478 (S.D. Tex. 2009) (quoting United States v. Cook, 86 S. Ct. 1412, 1415 (1966)); *see also* Schwab v. Schlumberger Well Surveying Corp., 145 Tex. 379, 382, 198 S.W.2d 79, 81 (1946) (explaining that statutes that are "penal in nature . . . must be strictly construed and cannot be extended beyond the clear import of their language.").

[8] Document No. 150 ¶¶ 28-29.

these statutes in the operation of its own escort vehicle.  Again, Plaintiffs fail to state a claim upon which relief can be granted against the Pilot Car Defendants for any statutory violation under Chapter 545.  The Pilot Car Defendants therefore are entitled to dismissal with prejudice of Count III of Plaintiffs' Third Amended Complaint, alleging negligence *per se* based on statutory violations.

B.   Joint Enterprise

Plaintiffs in Count VI of their Third Amended Complaint plead a joint enterprise theory against the Pilot Car Defendants and others to seek imposition of liability upon all.  Pilot Car Defendants argue that Plaintiffs fail to allege facts necessary to support their joint enterprise claim.[9]  Plaintiffs respond that "analysis of whether a joint enterprise exists here is premature" because it is generally a question for the jury, and in any event they adequately pled their claim.[10]

"The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other."  Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974).  Texas courts adopted the definition of joint enterprise as stated in the Restatement (2d) of Torts:

---

[9] Document No. 152 at 5 of 9.

[10] Document No. 158 at 10 of 27.

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Id. at 16-17 (quoting RESTATEMENT (2D) OF TORTS § 491, cmt. c (1965)).

In their motion to dismiss, the Pilot Car Defendants challenge only the third element, arguing that Plaintiffs "have not--and cannot--allege the facts necessary to support the 'community of pecuniary interest' element."[11]  The Texas Supreme Court explained

> [t]he ordinary meaning of "pecuniary" is "of or pertaining to money." Thus, to satisfy the third element of the Restatement definition an interest must first be monetary in nature. And again, that monetary interest must be common among the members of the group--it must be one "shared without special or distinguishing characteristics."

St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 531 (Tex. 2002) (quoting WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1428 (1996); Ely v. Gen. Motors Corp., 927 S.W.2d 774, 779 (Tex. App.--Texarkana 1996, writ denied)).  "Indirect potential financial interests do not satisfy the test." Omega Contracting, Inc. v. Torres, 191 S.W.3d 828, 850 (Tex. App.--Ft. Worth 2006, no pet.); Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P., 58 S.W.3d 263, 276 (Tex. App.--Ft. Worth 2001, pet. denied) ("evidence of such general benefits

---

[11] Document No. 152 at 4 of 9.

does not establish a community of pecuniary interest in the common purpose to be carried out by the group").

Plaintiffs allege that "[a]ll members of the transportation crew . . . had agreements to work together and engaged in a common, single, concerted effort to transport the APU skid for profit," and "[t]he entire transportation crew had a 'community of pecuniary interest' in that they were all sharing in the monetary benefit from the transport of the APU skid."[12] Merely sharing in the monetary benefit from the transport, however, is insufficient to establish the community of pecuniary interest element as declared in Texas law. *See* Wolff, 94 S.W.3d at 532 (finding that "the existence of monetary benefits flowing from the program does not by itself satisfy the third element of a joint enterprise").

Plaintiffs argue in their response that "[t]he entire crew had a 'community of pecuniary interest' in that they all pooled their resources, equipment and purported skill to accomplish their common goal of safely transporting the APU skid," and that "they all stood to benefit monetarily from the collective and joint efforts . . . ."[13] Plaintiffs' conclusory characterization of Defendants' joint efforts with their resources and equipment to transport the APU skid as a "community of pecuniary interest" is a misapplication of that phrase. The case cited by Plaintiffs to support their

---

[12] Document No. 150 ¶ 65.

[13] Document No. 158 at 11 of 27.

argument does not go so far.  In Tex. Dep't of Transp. v. Able, the Supreme Court of Texas found a community of pecuniary interest where the two entities had a "Master Agreement," which "plainly recognize[d] that the Transitways project involved substantial sums of money and contemplated a sharing of resources in order to make better use of this money."  35 S.W.3d 608, 614 (Tex. 2000).  The Court observed that federal, state, and local funds were employed in the project and that the pooling of resources may well have produced substantial monetary and personnel savings.  Id.

In this case, however, Plaintiff has not pled that the parties pooled any funds or that by the parties' working together successfully they would have shared any monetary savings or enhanced benefit.  A more recent Texas Supreme Court case emphasizes that the third element of a joint enterprise requires *more* than the mere existence of monetary benefits following from the enterprise:  "the monetary benefits [must be] shared among the members without special or distinguishing characteristics." Wolff, 94 S.W.3d at 532.  Plaintiffs' Third Amended Complaint makes no such allegation.  To the contrary, Plaintiffs plead that Contractors Cargo Company contracted with Defendant Talleres Willie for the transport and "did not include the provision of escort vehicles or escort services."[14]  The latter services, according to Plaintiffs' pleading, were arranged by Defendant Bernardo Ainslie,

---

[14] Document No. 150 ¶ 14.

who in doing so "act[ed] outside of the scope of the services Talleres Willie provided as the carrier for the transport because Defendant Talleres Willie was not contracted to and was not supposed to supply an escort vehicle or escort services as part of its contract with Contractors Cargo for this transport."[15] Plaintiffs' pleading of these several contracts and separate arrangements among several parties obviously excludes any allegations of a true joint enterprise with a sharing of the monetary benefits by all members "without special or distinguishing characteristics."  *See also* Omega Contracting, Inc., 191 S.W.3d at 851 (explaining that there was no community of pecuniary interest when revenue would be divided based on each parties' work).

Taking the facts as alleged by Plaintiffs as true, there is nothing to indicate a community of pecuniary interest such as is required for a joint enterprise.  Accordingly, Plaintiffs fail to allege sufficient facts to sustain their theory that the Pilot Car Defendants were engaged in a joint enterprise, and the Pilot Car Defendants are entitled to dismissal of Count VI, alleging a joint enterprise.

C.   Leave to Amend

Plaintiffs have not filed a motion for leave to amend, but summarily request "the opportunity to amend their pleading to

---

[15] Id. ¶ 15.

eliminate any pleading deficiencies and/or conduct discovery to more clearly state Plaintiffs' claims and allege additional facts, if necessary."[16] There is no proposed amendment or other proffer as to what additional facts, if any, Plaintiff could plead to "eliminate" the defects that are fatal to Plaintiffs' amended complaint. "'[A] bare request in an opposition to a motion to dismiss--without any indication of the particular grounds on which the amendment is sought, cf. FED. R. CIV. P. 7(b)--does not constitute a motion within the contemplation of Rule 15(a).'" U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir. 2003) (quoting Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993)).  Especially here, where the parties' pretrial discovery has been ongoing for well more than a year, there is no reason to believe that further discovery or additional pleading will cure the defects identified above. Accordingly, Plaintiff's request to replead is denied as futile. Foman v. Davis, 83 S. Ct. 227, 230 (1962).

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendants Charles Van Kirk d/b/a Slingshot Pilot Car Services and Claude Joseph Kimmel d/b/a Freedom Pilot Car's Motion to Dismiss (Document No. 152) is GRANTED IN PART, and Counts

---

[16] Document No. 158 at 24 of 27.

III and VI of Plaintiffs Air Liquide Mexico S. de R.L. de C.V. and Air Liquide Process and Construction, Inc.'s Third Amended Complaint against Defendants Van Kirk and Kimmel are DISMISSED WITH PREJUDICE for failure to state claims upon which relief can be granted.  To the extent, if any, that Defendants' motion seeks dismissal of any other of Plaintiffs' claims, the motion is DENIED.

    The Clerk will enter this Order, providing a correct copy to all counsel of record.

    SIGNED in Houston, Texas, this 15th day of December, 2015.

                                        EWING WERLEIN, JR.
                                    UNITED STATES DISTRICT JUDGE